# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| Jameel L. Banks, | : | Case No. 1:07CV1279 |
| | : | |
| Petitioner | : | Judge Patricia A. Gaughan |
| | : | |
| v. | : | Magistrate Judge David S. Perelman |
| | : | |
| Helen J. Marberry, Warden, | : | |
| | : | **REPORT AND RECOMMENDED** |
| | : | **DECISION** |
| Respondent | : | |

In this action in habeas corpus, 28 U.S.C. §2254, petitioner challenges the constitutionality of his August 20, 2003 conviction pursuant to a jury trial of one count of aggravated robbery, three counts of kidnapping, and one count of theft, each count bearing a firearm specification.  After merging the robbery and theft convictions, the trial court sentenced petitioner to a total of eight years on those counts; to concurrent three-year terms of imprisonment on each of the kidnapping convictions; and to three years on the firearm specification, with all sentences to be served consecutively, for an aggregate of fourteen years incarceration.

On November 3, 2003 petitioner, acting through new counsel, appealed his convictions to the Ohio Eleventh District Court of Appeals, alleging three assignments of error:

    I.    The trial court erred by sentencing appellant to serve consecutive, rather than concurrent sentences.

    II.   The trial court erred when it denied appellant's motion to have

> separate trials between appellant and the co-defendant.
>
> III. The appellant's convictions are against the manifest weight of the evidence.

The facts in petitioner's criminal case were summarized by the state appellate court in pertinent part as follows:

> The facts revealed that, on the evening of December 22, 2001, an Aldi's supermarket in Ashtabula County, Ohio, was robbed. Three store employees, who were present during the robbery, testified to relevant factual events.
>
> At approximately 7:00 p.m., on December 22, 2001, an Aldi's employee closed the store to any incoming customers, while the remaining customers finished shopping. A few minutes later, the employee proceeded to the store's restrooms for a final clean up. Upon entering one of the restrooms, the employee was confronted by a man wearing a ski mask and holding a gun. The perpetrator demanded that the employee bring him to the store's office. The employee complied. Once in the office, the perpetrator opened the employee's cash register till, which was empty.
>
> Meanwhile, a co-worker "buzzed" the employee, which signaled the employee to proceed to the front of the store and ring out the final customers. The perpetrator instructed the employee to page the store's assistant manager. The employee obeyed the perpetrator's order.
>
> The assistant manager and co-worker, who were the only other employees at the store, responded to the page. When the assistant manager and co-worker opened the office door, they were confronted by the perpetrator as he pointed a gun at both of them. He bound the feet and hands of the assistant manager and co-worker with duct tape, but then cut loose the binds to allow them to open their register tills. After taking money from the register tills, the perpetrator commanded the assistant manager to open the store's safe. When the assistant manager informed the perpetrator that she was unable to open the safe, he threatened her with the gun. The assistant manager again explained that she could not open the safe because she did not have the proper key. The perpetrator then used a cell phone to place a call and fled the store.

All three store employees testified that throughout the robbery appellant was communicating to an individual outside the store via cell phone. The testimony established that the perpetrator was speaking with a female who was providing him with information that assisted with the robbery. The employees testified that the perpetrator was a black male and identified appellant's voice as that of the perpetrator. Also, the assistant manager testified that the perpetrator stole approximately $2,300.

Testimony established that appellant fled the store around 8:00 p.m. In particular, the testimony demonstrated that the perpetrator was spotted at approximately 8:00 p.m., moving quickly on foot near a Kentucky Fried Chicken which was just west of the Aldi's store. The witness stated that the perpetrator was clutching a white bag or pillow case.

Back at the store, the employees informed Ashtabula County Police Officers that they did not know who owned a Cadillac left at the store's parking lot. The car's license plates were traced to an individual from Cuyahoga County and were registered to a different vehicle. After securing a search warrant, the police found two license plates in the Cadillac's trunk. When the police traced these license plates, the results established that the Cadillac belonged to appellant.

During the joint trial, the prosecution presented evidence of various items found in appellant's Cadillac. First, the prosecution presented evidence of a used roll of silver-colored "Frost King" brand duct tape and remnants of silver-colored "Duck" brand duct tape, both of which were retrieved from appellant's Cadillac. Also retrieved from appellant's car were cell phone bills and cell phone numbers of his co-defendant, Kecia Green. DNA testing of cigarette butts found inside appellant's Cadillac was consistent with his co-defendant's DNA.

The Ashtabula Police conducted a dog-track of the area near the store. During the track, the dog discovered a white bag to the west of the store in a small wooded-lot. The bag contained two separate ski masks, a pair of black leather gloves, money in the amount of $2,388, and a roll of duct tape. Underneath the bag was a nine-millimeter pistol.

The police performed a DNA analysis of a hair found in one of the ski masks from the white bag. The DNA analysis was consistent

> with appellant's DNA.
>
> Finally, the prosecution provided evidence of appellant's cell phone use on the night of the robbery. The cell phone company's records established that appellant's cell phone was used to place calls to the co-defendant's cell phone, and receive calls from the co-defendant's cell phone, forty-eight times between the hours of 6:55 p.m. and 10:55 p.m.
>
> Following the joint trial, the jury found appellant guilty on all charges. Accordingly, the court entered judgment convicting appellant on one count of aggravated robbery, one count of theft, and three counts of kidnapping, with a firearm specification included on each count.

On September 30, 2005 the state appellate court affirmed the judgment of conviction and sentence.

On November 14, 2006 petitioner appealed the state appellate court ruling to the Ohio Supreme Court alleging the following two propositions of law:

> **Proposition of Law No. I:** Appellate counsel is ineffective when counsel fails to argue that a trial court erred by imposing non-minimum, consecutive prison terms without findings from a jury.
>
> **Proposition of Law No. II:** A trial court may not impose non-minimum or consecutive prison terms in the absence of jury findings of the factors set forth in R.C. 2929.14(B), R.C. 2929.14(C) and 2929.14(E).

On February 8, 2006 the state supreme court denied petitioner leave to appeal and dismissed the appeal as not involving any substantial constitutional question. Petitioner did not appeal this decision to the United States Supreme Court.

On May 1, 2006 the petitioner filed the instant petition, in which he raises the following two claims for relief:

> **A. GROUND ONE:** Mr. Banks was represented by appointed counsel on direct appeal from his criminal conviction and imposition of a 14-year prison term. Appellate counsel raised three issues on direct appeal, challenging the sentence imposed

4

> under state law; challenging the trial court's decision not to sever Mr. Banks' conviction as against the manifest weight of the evidence. Appellate counsel did not raise a constitutional challenge to the trial court's imposition of non-minimum and consecutive prison terms. These prison terms were based on facts that were found by the trial court, but were not found by the jury or proven beyond a reasonable doubt. Despite the fact that the United States Supreme Court decision in *Blakely v. Washington*, 542 U.S. 296 (2004) on June 24, 2006, over two months before appellate counsel filed Mr. Banks' brief in the state court of appeals, appellate counsel never raised this important constitutional issue in the state court of appeals. Thus, appellate counsel failed to raise a meritorious sentencing issue on direct appeal and thereby rendered constitutionally ineffective assistance of counsel.
>
> **B.  GROUND TWO:** Jameel Banks was sentenced to serve two non-minimum terms, and these prison terms were ordered to be served consecutively to each other and consecutively to a federal prison term. The trial court was required to make certain mandatory statutory findings before imposing non-minimum and consecutive prison terms on Mr. Banks. See Ohio R.C. 2929.14(B)and (E)(4). These findings were not made by the jury or admitted by Mr. Banks. The state trial court's reliance on factual findings that were not made by the jury or admitted by Mr. Banks to support imposition of non-minimum and consecutive prison terms contravened his Sixth Amendment right to a trial by jury.

The provisions of the Antiterrorism and Effective Death Penalty Act, "AEDPA," Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 26, 1996) are controlling herein as the instant petition was filed after the Act's effective date. Lindh v. Murphy, 521 U.S. 320 (1997).[1]

At the outset the respondent argues that the petitioner's second claim for relief is procedurally defaulted.

The exhaustion doctrine requires that before filing a petition in federal habeas corpus a

---

[1]There are no issues of untimeliness in this case.

5

defendant must utilize all available state remedies, through a motion or petition for review by the state's highest court, by which he/she may seek relief based upon an alleged violation of constitutional rights.  Granberry v. Greer, 481 U.S. 129, 133 (1987).  Under the exhaustion doctrine a petitioner must "fairly present" each federal constitutional claim to the state courts before seeking relief in federal court.  Baldwin v. Reese, 541 U.S. 27 (2004);  Hannah v. Conley, 49 F.3d 1193, 1196 (6th Cir. 1995).  In so doing, state courts are afforded "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

Fair presentation of the factual and legal basis for a federal constitutional issue to the state's courts may be made in four ways:

> (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.

McMeans v. Brigano, 228 F.3d 674, 681 (6th Cir. 2000), citing Franklin v. Rose, 811 F.3d 322, 326 (6th Cir. 1987), cert. denied, 532 U.S. 958 (2001).  Accord, Whiting v. Burt, 395 F.3d 602, 613 (6th Cir. 2005); Blackmon v. Booker, 394 F.3d 399, 400 (6th Cir. 2004).  It is not enough to present the facts giving rise to the federal claim raised in habeas corpus;  a petitioner must present the same legal theory to the state courts as is presented to the federal courts in order to preserve the claim. Wong v. Money, 142 F.3d 313, 322 (6th Cir. 1998).  Even if a claim is related, but distinct, the claim is nonetheless defaulted.  Lott v. Coyle, 261 F.3d 594, 607, 619 (6th Cir. 2001).

In addition, merely "mak[ing] a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court[,]" does not sufficiently apprise

6

the state court of a specific federal constitutional guarantee so as to exhaust the claim. Gray v. Netherland, 518 U.S. 152, 162-63 (1996), citing Picard v. Connor, 404 U.S. 270, 271 (1971) and Anderson v. Harless, 459 U.S. 4, 7 (1982). For example, use of the term "ineffective assistance" also fails to alert the state courts of the federal nature of a claim. Baldwin v. Reese, supra.

Where a petitioner has failed to fairly present the factual and legal basis for a federal constitutional issue and where petitioner would be barred from pursuing relief on that claim in the state courts, the petition should not be dismissed for failure of exhaustion in light of the fact that there would be no available state remedies to exhaust. Hannah v. Conley, supra at 1195-96; Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994). Under a longstanding Ohio procedural rule, a claim which could have been but was not raised on direct appeal would be barred from being raised in a delayed appeal or in a petition for post-conviction relief. See, Collins v. Perini, 594 F.2d 592, 593 (6th Cir. 1978). However, the petitioner must then demonstrate cause for failure to fairly present the claims to the state courts and actual prejudice to petitioner's defense at trial or on appeal. Gray v. Netherland, supra at 162; Coleman v. Thompson, 501 U.S. 722, 750-51 (1991); Deitz v. Money, 391 F.3d 84, 808 (6th Cir. 2004).

The respondent argues that petitioner's second claim for relief, which was not argued before the state court on direct appeal, was not fairly presented.

Petitioner's direct appeal in state court included a challenge to the imposition of consecutive rather than concurrent sentences, which challenge was based solely on state law and not on any principles of federal constitutional law. Under the authorities cited previously, petitioner has not fairly presented this claim for relief merely because the facts necessary to support a federal constitutional claim are present or because the constitutional claim appears to be

self-evident. Raising that same claim for relief on appeal to the Ohio Supreme Court, does not cure the failure to raise it before the lower appellate court.

As cause for the procedural default, petitioner argues (as his first claim for relief in these proceedings ) that appellate counsel was constitutionally ineffective for failure to raise the claim on direct appeal.

Error or imprudent tactical decision by an otherwise competent counsel does not constitute cause for a procedural default. Murray v. Carrier, 477 U.S. 478 (1986). Only where counsel is constitutionally ineffective can his/her error be deemed "cause." Id. at 488-89. See, also, Lucas v. O'Dea, 179 F.3d 412, 419 (6th Cir. 1999). "[The petitioner's] ineffective assistance of appellate counsel claims can serve as cause for the procedural default of his other claims only if [the petitioner] can demonstrate that his appellate counsel was constitutionally ineffective." Buell v. Mitchell, 274 F.3d 337, 351-52 (6th Cir. 2001).

Before a claim of ineffective assistance of counsel can be cited as cause for a procedural default, however, it must "be presented to the state courts as an independent claim." Id. at 489.

> The question whether there is cause for a procedural default does not pose any occasion for applying the exhaustion doctrine when the federal habeas court can adjudicate the question of cause--a question of federal law--without deciding an independent and unexhausted constitutional claim on the merits. But if a petitioner could raise his ineffective assistance claim for the first time on federal habeas in order to show cause for a procedural default, the federal habeas court would find itself in the anomalous position of adjudicating an unexhausted constitutional claim for which state court review might still be available. The principle of comity that underlies the exhaustion doctrine would be illserved by a rule that allowed a federal district court "to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," . . . and that holds true whether an ineffective assistance claim is asserted as cause for a procedural default or denominated as an independent ground for habeas relief.

Id. (Citation omitted).  Accord, Edwards v. Carpenter, 529 U.S. 446 (2000).

In the present case, although the petitioner did raise his claim of ineffective assistance of appellate counsel in his appeal to the state supreme court, he failed to follow Ohio law which requires one to raise claims of ineffective assistance of appellate counsel in an application for reopening (which can also be captioned a motion for delayed reconsideration) "'in the court of appeals where the alleged error took place.'"  Fautenberry v. Mitchell, 515 F.3d 614, 639-640 (6th Cir. 2008), quoting State v. Murnahan, 63 Ohio St.3d 60, 584 N.E.2d 1204 (1992).  Under Rule 26(B)(1) of the Ohio Rules of Appellate Procedure, such an application is to be filed "in the court of appeals where the appeal was decided within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time."  Petitioner has offered no reason for his having failed to do so and, therefore, no indication that he would be able to establish good cause for filing at this late date.  That having been said, it would be futile for this Court to require petitioner to go back to state court to file a Rule 26 application to reopen his direct appeal.

It would follow that this claim of ineffective assistance of appellate counsel has been exhausted, but procedurally defaulted.

In light of the foregoing, both of petitioner's claims for relief are subject to dismissal on procedural grounds.

However, even if petitioner's claims for relief are considered on their merits, they would nonetheless fail.

Turning to merits review, the role of a federal district court in habeas corpus is set forth in Title 28 U.S.C. § 2254 (d) which provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has held that the clauses "contrary to" and "unreasonable application of" as found in §2254(d)(1) have independent meanings. Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000). A state court adjudication is deemed as being "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that of the Supreme Court]." A state court adjudication is deemed as involving an "unreasonable application of clearly established Federal law, as determined by the Supreme Court...as of the time of the relevant state-court decision;" "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "if the state court either unreasonably extends a legal principal from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principal to a new context where it should apply." 120 S.Ct. at 1519-1520. In deciphering the "unreasonable application" clause this Court must inquire as to whether "the state court's application of clearly established federal law was objectively unreasonable." Id. at 1521.

The Sixth Circuit Court of Appeals has interpreted the foregoing as holding that even if a federal habeas corpus court determines that a state court incorrectly applied federal law it may not grant relief in habeas corpus unless it finds that the state court ruling was also unreasonable. Simpson v. Jones, 238 F.3d 399, 405 (6th Cir. 2000), citing Machacek v. Hofbauer, 213 F.3d 947, 953 (6th Cir. 2000), cert. denied, 121 S.Ct. 808 (2001).

In his first claim for relief petitioner alleges that he was denied the effective assistance of appellate counsel by reason of counsel's failure to raise certain issues on direct appeal.

A petitioner claiming ineffective assistance of counsel must demonstrate that counsel's conduct was so far below acceptable standards of representation that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment to the United States Constitution, and that such deficient performance so prejudiced the defense as to render the trial unfair. Strickland v. Washington, 466 U.S. 668 (1984). See also, United States v. Bavers, 787 F.2d 1022 (6th Cir. 1985). Disagreement by a defendant with tactics and/or strategy will not support a claim of ineffective assistance, and a petitioner in habeas corpus must overcome a presumption that challenged conduct of counsel was a matter of strategy, Strickland, 466 U.S. at 689. Accord, Wilson v. Yukins, unreported, 1999 U.S.Dist. LEXIS 7644 (E.D.Mich. 1999). The prejudice prong of the test may be satisfied by a showing that counsel's error deprived the petitioner of a fundamentally fair trial which resulted in a verdict lacking in reliability. Kimmelman v. Morrison, 477 U.S. 365 (1986).

The Sixth Amendment right to effective assistance of counsel extends to appellate counsel on direct appeal of a criminal conviction. Evitts v. Lucey, 469 U.S. 387 (1985). The Sixth Circuit Court of Appeals has held that:

11

> In order to succeed on a claim of ineffective assistance of appellate counsel, a petitioner must show errors so serious that counsel was scarcely functioning as counsel at all and that those errors undermine the reliability of the defendant's convictions. Strategic choices by counsel, while not necessarily those a federal judge in hindsight might make, do not rise to the level of a Sixth Amendment violation.

McMeans v. Brigano, 228 F.3d 674, 682 (6th Cir. 2000), cert. denied, 532 U.S. 958 (2001) (Citations omitted.).

The failure of appellate counsel to assert claims on appeal cannot rise to the level of denial of a constitutional right unless such failure was so ill-advised as to have caused petitioner to effectively have been without counsel. Burton v. Renico, 391 F.3d 764, 773 (6th Cir. 2004). A petitioner asserting appellate counsel's failure to raise unasserted claims will not be able to establish such a showing even if the unasserted claims are deemed not to have been frivolous, if those claims are without merit. Ibid. "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Smith v. Robbins, 528 U.S. 259, 288 (2000).

Stated differently, a petitioner cannot succeed on a claim of ineffective assistance of appellate counsel by reason of failure to raise a particular assignment of error on appeal, unless there is a reasonable probability that such assignment of error would have succeeded at the time that counsel failed to raise it. McFarland v. Yukins, 356 F.3d 688, 699-700 (6th Cir. 2004). When appellate counsel fails to raise a claim lacking in merit, that failure cannot amount to ineffective assistance of appellate counsel. Willis v. Smith, 351 F.3d 741, 746 (6th Cir. 2003). In order to be successful on a claim of ineffective assistance of appellate counsel, a petitioner must demonstrate that but for appellate counsel's deficient performance, there is a reasonable probability that

petitioner would have prevailed on appeal.  Mapes v. Tate, 388 F.3d 187, 194 (6th Cir. 2004).

In petitioner's first claim for relief he argues that the representation by his appellate counsel was constitutionally ineffective by reason of counsel's failure to raise the issue of sentencing error. This argument turns on the underlying assertion that he was improperly sentenced by the trial court when it relied on facts not admitted by him, and not determined by a jury, to enhance his sentence beyond the minimum sentence under the law in violation of the rule of law set out by the United States Supreme Court in Blakely v. Washington, 542 U.S. 296 (2004).  The Blakely case was decided three months before appellate counsel filed the petitioner's brief on direct appeal.

In Blakely, the Court held that violations of the Sixth Amendment to the United States Constitution could be avoided if "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  Id. at 301 (quoting Apprendi v. New Jersey, 530 U.S. 466, 490 (2000)).  Although the Blakely case limited the authority of the trial judge to impose sentences in excess of the maximum provided by law, the authority of a sentencing judge to impose a sentence within the prescribed statutory range for a particular offense was not limited in the same way.

In January of 2005 the United States Supreme Court held, in United States v. Booker, 543 U.S. 220, 245, 259 (2005), that the mandatory provisions of the United States Sentencing Guidelines were unconstitutional under the Blakely decision, but they could be used in an advisory manner.

The Ohio Supreme Court applied the Apprendi, Blakely, and Booker decisions to the Ohio sentencing guidelines and held that parts of Ohio's felony sentencing scheme were

13

unconstitutional, including Ohio Revised Code §§ 2929.14(B), 2929.19(B)(2), and 2929.41, which provide for judicial findings of fact in order to rebut presumptions in sentencing terms; §2929.14(C), providing for the imposition of maximum sentences; §2929.14(D)(2)(b), findings for repeat violent offender; §2929.14(D)(3)(b), major drug offenders; §2929.14(E)(4), providing for the imposition of consecutive sentences; and §2953.08 (G), statutory findings for consecutive sentences in the appellate record. State v. Foster, 109 Ohio St.3d 1, 62-67, 83, 845 N.E.2d 470 (2006). The constitutional violation was premised upon the fact that those provisions require judicial findings of fact beyond those either rendered by the jury or admitted to by the defendant. Ibid. Those offending portions of the sentencing code were severed, but trial courts retained full discretion to impose sentences within the statutory range while no longer being required to make findings of fact or to articulate reasons for imposing maximum or consecutive sentences. Id. at 100. As the Court did in Booker, the Ohio Supreme Court determined that its holding in Foster was to be applied to any case pending on direct appeal, and that where sentences were found to have been constitutionally invalid, remanding and resentencing were in order.

Turning to the present case, the petitioner was convicted and sentenced in October of 2003, his direct appeal was filed in September of 2004, and the appeal was decided in September of 2005. Petitioner was sentenced before the Blakely decision, but his appeal was filed three months after Blakely. The Foster case was decided after the appellate court issued its decision on petitioner's direct appeal.

At the time of the filing of petitioner's direct appeal, most Ohio courts had held that the Blakely decision did not apply to Ohio's sentencing scheme. State v. Foster, 845 N.E.2d at 487-488. The Foster court further noted that although the Ohio Eleventh District Court of Appeals

14

applied the Blakely decision to repeat violent offender sentencing enhancements, it was not otherwise applicable to Ohio's sentencing scheme. Id. at 487-488, n. 78, 80 (citing State v. Payne, Case No. 2004-L-118, 2005 Ohio 7043, 2005 Ohio App. LEXIS 6355 (Ohio Ct. Ap. Nov. 29, 2005) and State v. Rupert, Case No. 2003-L-54, 2005 Ohio 1098, 2005 Ohio App. LEXIS 1067 (Ohio Ct. App. March 11, 2005, reversed by In re Ohio Crim. Sentencing Statutes Cases, 847 N.E.2d 1174 (Ohio 2006)). The Eleventh District had specifically issued decisions prior to the Foster case in which Blakely was distinguished and it was determined that trial courts did not violate the Blakely case by engaging in judicial fact-finding. State v. Dinapoli, Case No. 2003-L-169, 2005 Ohio App. LEXIS 859, at **22-26 (Ohio Ct. App. Feb. 25, 2005), reversed by In re Ohio Crim. Sentencing Statutes Cases, 847 N.E.2d 1174 (Ohio 2006); State v. Taylor, 821 N.E.2d 192, 197 (Ohio Ct. App. 2004).

The Sixth Circuit Court of Appeals, in a habeas case in which the petitioner raised a claim of ineffective assistance of appellate counsel for failure to challenge the imposition of consecutive sentences without the requisite judicial findings to rebut the presumption of concurrent sentences under the pre-Foster felony sentencing scheme, rejected that petitioner's arguments and upheld the denial of his petition for writ of habeas corpus. Minor v. Wilson, Unreported, Case No. 05-3534, 2007 U.S.App. LEXIS 1067 (6th Cir. 2007). In so doing, the court explained that there had been a dramatic change in Ohio's felony sentencing law in response to the Apprendi and Blakely cases, citing the Foster case, but noted that Mr. Minor could not benefit from those changes in light of the fact that his case was not pending on direct review at the time of the change in law and that, in any event, the new sentencing scheme would work to his detriment considering that "trial courts [were] now no longer required to make any findings or give any reasons when imposing

15

consecutive sentences." Id. at p.5, n.1. That same new felony sentencing scheme would work to the detriment of the petitioner in the present case in that the sentences imposed herein were within the statutory limits, and under the post-Foster sentencing rules the trial court is not required to engage in fact-finding or to articulate its rationale in order to impose concurrent (or consecutive, for that matter) sentences within the statutory limits.

In this case petitioner's appellate counsel's failure to challenge petitioner's sentence pursuant to the Blakely decision was not objectively unreasonable in light of the foregoing authorities. In addition, a claim of improper sentencing was not clearly stronger than the issues presented on appeal, particularly since the issues raised by petitioner's counsel challenged the validity of petitioner's conviction at trial, which could have resulted in the reversal of that conviction, whereas a sentencing challenge, even if it had been successful, could have only resulted in a remand for resentencing. Minor v. Wilson, supra at *14-*15, citing State v. Henry, 37 Ohio App.3d 3, 523 N.E.2d 877, 880 (Ohio Ct. App. 1987) and Ohio Revised Code § 2953.08(G) (1999). Any error in not raising this sentencing issue on appeal did not rise to the level of ineffective assistance of appellate counsel, so that petitioner's first claim for relief is without merit.

Similar rationale applies to merits review of petitioner's second claim for relief, in which he argues the same claim as that underlying the first claim for relief, being that his sentence amounted to a Blakely type error.

Such errors are subject to a harmless error analysis. Washington v. Recuenco, ___ U.S. ___, 126 S.Ct. 2546, 2551, 2553 (2006). In Shafer v. Wilson, Unreported, Case No. 1:06CV0648, 2007 U.S.Dist. LEXIS 2007 (N.D.Ohio 2007), Judge Gwin denied relief in habeas corpus to a

petitioner who claimed that the consecutive sentences imposed by the trial court violated <u>Blakely</u>, finding that although the pre-<u>Foster</u> felony sentencing scheme did violate <u>Blakely</u>, the error was harmless and "there [was] no reason to believe the Petitioner would receive a more favorable sentence if the court grants his habeas request for relief." As was stated previously, a sentencing challenge, even if it had been successful, could have only resulted in a remand for resentencing and not a reversal of petitioner's conviction. Accord, <u>State v. Frazier</u>, Case No. 05AP-1323, 2007 Ohio App. LEXIS 6, at **28-29, **31 (Ohio Ct. App. Jan. 5, 2007); <u>State v. Peeks</u>, Case No. 05AP-1370, 2006 Ohio App. LEXIS 6231, at **10-11 (Ohio Ct. App. Nov. 30, 2006), discretionary appeal allowed, 2007 Ohio LEXIS 721 (Ohio March 28, 2007). That being so, any <u>Blakely</u> error would have been harmless and, therefore, would not warrant relief in habeas corpus.

In light of all the foregoing, it is recommended that the petition be dismissed without further proceedings.

s/DAVID S. PERELMAN
United States Magistrate Judge

DATE:   June 10, 2008

**OBJECTIONS**

Any objections to this Report and Recommended Decision must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See, also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).